# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### March 2000 Session

## JOHNNY PHELPS v. TENNESSEE DEPARTMENT OF CORRECTION

### Appeal from the Chancery Court for Davidson County
### No. 98-186-II     Carol L. McCoy, Chancellor

---

### No. M1999-02109-COA-R3-CV  - Filed July 28, 2000

---

Petitioner/Appellant, a state prisoner, filed his petition for common law certiorari asserting that he was being unconstitutionally and illegally incarcerated by the state and had not been given proper credits under various sentence reduction credit statutes and policies.  The trial court granted summary judgment and Petitioner appealed.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM B.CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Johnny Phelps, Nashville, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter, Michael E. Moore, Solicitor General, and Pamela S. Lorch, Assistant Attorney General, for the appellee, Tennessee Department of Correction.

## OPINION

### I.

Petitioner, Johnny Phelps, was convicted of rape on December 14, 1973 and sentenced to a term of 99 years in prison.  On February 21, 1975, he was convicted of assault with intent to commit murder and felony attempt to escape for which he received consecutive sentences of 1 to 2 years on each charge.

### II.

In this appeal, Petitioner first asserts that he is entitled to have his sentences revised to conform with the Criminal Sentencing Reform Act of 1989.  He argues that failure to re-sentence him under the 1989 Act violates the Equal Protection Clause of the United States Constitution and

of the Constitution of Tennessee. In responding to these constitutional objections, the trial court, on October 26, 1998, filed a Memorandum and Order providing in part as follows:

> Petitioner, an inmate in custody of the Tennessee Department of Correction, has filed a Declaratory Judgment action and/or Petition for Common-Law Writ of Certiorari challenging four aspects of his sentence. He alleges the following: constitutional and statutory violations because his sentence is not in compliance with the Criminal Sentencing Reform Act of 1989; violation of state law in regard to his sentence credit calculation; allegations that Respondent failed to rescind his waiver per his request; and constitutional and statutory violations because his release eligibility date was extended after a disciplinary conviction for assault. The Respondent moves for summary judgment.
>
> Petitioner was sentenced to 2 to 103 years for offenses committed on July 10, 1973 and May 31, 1974. Specifically, he received a 99 year sentence for rape with a consecutive 1 to 2 year sentence for assault with intent to murder and attempt to commit felony escape. He received a separate 1 to 2 year sentence for a second conviction of assault with intent to murder.
>
> Petitioner contends the 1989 Sentencing Act should apply to his convictions. Application of the 1989 Act would impose a lesser sentence for the offenses committed by Petitioner. T.C.A.§ 40-35-117(c) clearly states the 1989 Act does not apply to the Petitioner. It provides:
>
> > For all persons who committed crimes prior to July 1, 1982, prior law shall apply and remain in full force and effect in every respect, including, but not limited to, sentencing, parole and probation.
>
> Petitioner contends T.C.A. §39-1-105 (repealed in 1989 and replaced by § 39-11-112) requires he be resentenced under the 1989 Sentencing Act and the equal protection clause of the U.S. and Tennessee Constitutions requires the application of the 1989 Act to his convictions.
>
> T.C.A. §39-1-105 provided:
>
> > Repealed or amended laws – Application in prosecution for offense – Whenever any penal statute or penal legislative act of the state is repealed or amended by a subsequent legislative act, any offense, as defined by such statute or act as being repealed or amended, committed while such statute or act was in full force and effect shall be prosecuted under such act or statute in effect at the time of the commission of the offense. In the event the subsequent act provides

for a lesser penalty, any punishment imposed shall be
in accordance with the subsequent act.

T.C.A.§39-1-105 does not apply to convictions and sentences which were already received when a subsequent act provided for a lesser penalty. The statute applies to active prosecutions, not past cases for which sentences are being served. *State ex. rel. Stewart v. McWherter*, 857 S.W.2d 875 (Tenn. Crim. App. 1992). Furthermore, there is no equal protection violation by not applying the 1989 Act to Petitioner's sentence. While the equal protection clause states that all persons similarly situated must be treated alike, the legislature may treat a class of persons differently so long as the classification has a rational relationship to a legitimate state interest. In *State ex. rel. Bobby L. Crum v. McWherter*, No. 02C01-9108-CC-0018 (Tenn. Crim. App., at Jackson, May 13, 1992), the Court of Criminal Appeals utilized a rational relationship test to uphold an equal protection challenge based on pre-1989 and post-1989 kidnapping sentences. The court in *Crum* found a rational basis for the distinction based upon society's interest in preserving the finality of criminal litigation resulting in convictions and sentences which were valid at the time of their imposition and thus avoiding "[t]he wholesale unsettling of final judgments of conviction and sentence[.]" *Id.* at 4. Even under the strict scrutiny standard of [the] equal protection clause, Petitioner's argument fails. In addition to the state interest espoused in the *Crum* case, the legislature passed the 1989 Act primarily to relieve prison overcrowding. This is a compelling reason to justify the different treatment. *Stewart, supra; Barrett v. State*, No. 02C01-9508-CC-00233 (Tenn. Crim. App. at Jackson, February 27, 1997); *State ex. rel. Jones v. McWherter*, No. 01C01-9204-CR-00124 (Tenn. Crim. App. Nov. 18, 1992).

The Respondent's refusal to apply the 1989 Act does not violate the Eighth Amendment. If a penalty for a particular crime is reduced by a new legislation, it "does not mean the sentence under the prior law disproportionate[.]" *Barret, supra.* at 3.

Since all of Petitioner's convictions had been entered and had become final in 1973 and 1974, these constitutional attacks are foreclosed by *State ex rel. Stewart v. McWherter*, 857 S.W.2d 875 (Tenn. Crim. App. 1992). In *Stewart*, the defendant was convicted on December 13, 1983 and sentenced to 40 years on each of 5 armed robbery convictions, 3 of which were ordered to be served consecutive to each other and consecutive to an earlier conviction. *Id.* at 876. He appealed, making the same assertion as in the present case, that his constitutional right to equal protection under the law entitled him to the application of the 1989 Criminal Sentencing Reform Act, so as to reduce his sentence and allow his release. *Id.* Said the court:

The 1989 Sentencing Act provides that it applies only to those offenders who are sentenced after its effective date. T.C.A. § 40-35-117. Also, the enabling legislation for the Act provides that the "act shall not affect rights and duties that matured, penalties that were incurred, or proceedings that were begun before its

effective date." 1989 Tenn.Pub.Acts, ch. 591, § 115. Thus, by its terms, the 1989 Act does not apply to the petitioner's cases.

The thrust of the petitioner's constitutional argument is that equal protection of the law under Article XI, § 8 of the Constitution of Tennessee and the Fourteenth Amendment to the United States Constitution prohibits arbitrary and capricious legislation which confers upon one class of persons (armed robbers sentenced under the 1989 Act) benefits from which others in a like situation (armed robbers sentenced under previous law) are excluded. . . .
. . .
A primary purpose in the development and enactment of the 1989 Sentencing Act was to address the pressing issue of prison overcrowding through the creation of new offense and sentencing standards. *See, e.g., State v. Ashby*, 823 S.W.2d 166, 168 (Tenn.1991). By limiting the Act's application to persons who were not previously sentenced, the legislature devised a partial solution to prison overcrowding while avoiding the reopening of cases in which persons had been validly sentenced previously. Thus, the petitioner's right to equal protection under the law has not been violated by his continued incarceration under the original sentences.

*Stewart*, 857 S.W.2d at 876-77. The constitutional claims of Petitioner are without merit and the trial court correctly so held.

III.

Petitioner next contends that he is entitled to earn good conduct sentence credits under Tennessee Code Annotated section 41-21-229, and prisoner performance credits under section 41-21-230, together with inmate incentive credits under section 41-21-228. He asserts an entitlement to all of these credits retroactively. In *Jones v. Reynolds*, No. 01A01-9510-CH-00484, 1997 WL 367661 (Tenn. Ct. App. 1997), prisoner performance credits were held to have replaced and superceded inmate incentive credits. Petitioner thus could not be entitled to both prisoner performance credits and inmate incentive credits and certainly not retroactively. Appellee, in support of its motion for summary judgment, filed the affidavit of Faye Claud, manager of Sentence Information Services for the Department of Corrections. This affidavit provides in part:

4.     The offense date for the Rape is July 10, 1973, therefore, the sentence is calculated under the Determinate sentencing law. The offense date for the other three cases is May 31, 1974, and they are calculated under the Indeterminate sentencing law.

5.     The expiration date is calculated with the benefit of Good Conduct credits (GCC) (TCA§ 41-21-229), which replaced Good and Honor (G&H) time (TCA §41-21-212, §41-21-214), effective July 1, 1981, (Conversion, TCA §41-21-231). All Good Conduct credits reflected in the sentence calculation today [are] a combination of Good and

-4-

Honor time earned and retained since conversion. Good & Honor time/Good Conduct credits were calculated into the sentence upon receipt of the offender and the judgment order, and lost each month the inmate is found guilty of a disciplinary infraction.

6.     The record reflects Mr. Phelps has lost a total of 335 days Good Conduct credits.

7.     Prior to September 1, 1980, inmates were evaluated by program staff every two months to determine if their performance and behavior were sufficient to earn Incentive time (TCA §41-21-228). Incentive time was earned in addition to G&H time. The maximum number of days which could be earned was 7.5 days every other month.

8.     Incentive time was replaced by Prisoner Performance Sentence Credit (PPSC) (TCA §41-21-230) effective September 1, 1980. All PPSC reflected in the calculation today, includes any Incentive time, if earned prior to September 1980. PPSC is awarded each month for positive program participation. The maximum number of PPSC which can be awarded per month is fifteen (15).

9.     The total number of PPSC days earned to date is eight hundred, and one (801).

Petitioner offers no contradiction by affidavit or otherwise to the Claud affidavit, and the trial court correctly granted summary judgment on this issue.

IV.

Petitioner raises another issue. He claims that he originally signed a waiver, required by statute, to allow him to participate in a new sentence reduction program enacted in 1985. Explaining this program, this court has held:

> The General Assembly repealed the PPSC program in 1985 in the same legislation that established the prisoner sentence reduction credit program in Tenn.Code Ann. § 41-21-236. The 1985 statute permits prisoners who committed their offenses prior to December 11, 1985 to opt into the new sentence reduction credit program. Prisoners opting into the new program accrue prisoner sentence reduction credits in accordance with Tenn.Code Ann. § 41-21-236(a). Prisoners electing not to opt into the new program continue to earn prisoner performance sentence credits under Tenn.Code Ann. § 41-21-230. See Tenn.Code Ann. § 41-21-236(g).

*Jones*, 1997 WL 367661 at * 4.

Petitioner claims that while he signed the waiver originally, it was not sufficiently explained to him. He later opted to rescind that waiver, but that Appellee had not honored the recission. Once again, he does not dispute the Faye/Claud affidavit which clearly shows that his recission of the waiver was honored and his sentence recalculated under prior law. Says Ms. Claud:

10. Mr. Phelps signed the sentence credit waiver to earn Prisoner Sentence Reduction Credits, and later opted to rescind the waiver. The waiver was removed from the sentence calculation, October 30, 1993. Mr. Phelps' sentence credits, parole date and sentence expiration date were recalculated by applying the sentence reduction statutes in effect prior to the new PSRC program.

11. The current probationary parole date is March 21, 2033; and the expiration date is September 19, 2055. These dates include credit earned through the February 1998 credit month.

The evidence before the court is uncontradicted that Petitioner's recission of his waiver has been honored by Appellee and his sentence calculations made accordingly.

V.

A final issue involves an extension of Petitioner's parole dates by 30% following a disciplinary action against him in which he was found guilty of assault on a member of the staff. He asserts that such extension of his parole dates is *ex post facto* punishment and involves double jeopardy. The affidavit of Jeannetta Kimbro, Sentence Analyst of the Department of Corrections, is the only evidence presented on this issue, and it states:

Johnny Phelps was found guilty of Assault on Staff, disciplinary #186717 by an institutional disciplinary board on January 9, 1995. The punishment was thirty (30) days punitive segregation and thirty (30) percent extension of his parole dates, per Policy 502.02. Sentence dates as stated in previous affidavit of March 20, 1998, reflected this extension.

Sentence Information Services has since been advised by the department's legal counsel to remove the release date extension as this extension was affecting his expiration as well as all parole dates. Once this was done his dates ha[ve] now changed as follows:

Probable Parole Date:          May 4, 2002
Mandatory Parole Date:         February 9, 2024
Expiration Date:               August 9, 2024

Thus, it is clear that the matters complained of as *ex post facto* and double jeopardy have been reversed within the Department of Corrections and the respondent restored to a probable parole date

of May 4, 2002, a mandatory parole date of February 9, 2024, and a sentence expiration date of August 9, 2024. This undisputed affidavit of Kimbro renders the final questions moot, and the court properly granted summary judgment.

VI.

The action of the trial court is in all respects affirmed and costs of this cause assessed against Petitioner/Appellant, Johnny Phelps.

_____
WILLIAM B. CAIN, JUDGE